**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

CASSANDRA RODGERS, individually and as next friend of D.R., J.R., and T.R., minor children,

Plaintiff,

v. NO. CIV-12-171-D

MARY FALLIN, et al.,

Defendants.

**ORDER**

Before the Court is the motion to dismiss [Doc. No. 5] of Governor Mary Fallin, one of eight defendants in this action. Governor Fallin seeks dismissal pursuant to Fed. R. Civ. P. 12(b)(1), arguing the Court lacks subject matter jurisdiction over the claims asserted against her because sovereign immunity bars those claims. In the alternative, Governor Fallin seeks dismissal pursuant to Fed. R. Civ. P. 12(b)(6), arguing the Complaint fails to state a claim upon which relief may be granted against her. Plaintiff responded to the motion, and Governor Fallin filed a reply.

Plaintiff's claims in this action are based on several orders of the Circuit Court of Pulaski County, Missouri regarding the custody of her minor children (the "custody orders"), and a separate Pulaski County, Missouri criminal action ("criminal proceeding") which resulted in a warrant for her arrest. She contends the defendants' actions in connection with the custody orders and the criminal proceeding violated her constitutional rights. She asserts claims arising under 42 U. S. C. §§ 1983, 1985[1] and 1988, as well as pendent tort claims. Plaintiff seeks actual and punitive damages for the alleged infringement of her constitutional rights, as well as injunctive relief against Governor

[1]Plaintiff's § 1985 claim alleges that all defendants except Governor Fallin conspired to violate Plaintiff's constitutional rights. Because that claim is not directed at Governor Fallin, it is not addressed in this Order.

Fallin.

Plaintiff does not allege that Governor Fallin had any role in the Missouri civil or criminal proceedings. Her sole claims against Governor Fallin are based on the Governor's execution, at the request of Missouri Governor Jeremiah W. Nixon, of a warrant for Plaintiff's arrest in Oklahoma and her extradition to Missouri in connection with the Missouri criminal proceeding.

Plaintiff alleges that she is a resident of Sequoyah County, Oklahoma. She and Defendant Nicholas Rodgers, a Missouri resident, are the parents of four children. According to the Complaint, they were married in Oklahoma in 2009, and moved to Pulaski County, Missouri shortly thereafter. Complaint at ¶¶ 17-18. Approximately one year later, Plaintiff left Mr. Rodgers, but continued to reside in Pulaski County. In 2010, she moved to Oklahoma. *Id.* at ¶ 19. In 2011, Mr. Rodgers filed a Petition for an Order of Child Protection in the Circuit Court of Pulaski County, and he was awarded custody of one of the minor children. The other children, who are triplets, continued to reside with Plaintiff, and she and Mr. Rodgers shared visitation rights. Complaint, ¶¶ 20-22. Later in 2011, Mr. Rodgers returned to the Missouri court, alleging that Plaintiff physically abused the triplets[2], and he was granted custody of them as well. *Id.* at ¶ 23. According to the Complaint, Plaintiff failed to comply with that custody order, and the triplets remained with her in Oklahoma. In October of 2011, Plaintiff was charged in Pulaski County with the Missouri felony crime of Interference with Custody, and a Missouri judge issued a warrant for Plaintiff's arrest. Complaint, ¶ 29-30. As a result of the criminal proceeding, Missouri officials took action to seek Plaintiff's arrest in Oklahoma, and sought Governor Fallin's approval of a warrant for Plaintiff's arrest in Oklahoma and extradition to Missouri. Governor Fallin executed the warrant, and Plaintiff was

[2]The Complaint repeatedly alleges that Mr. Rodgers falsely accused Plaintiff, and misrepresented facts to the Pulaski Circuit Court.

arrested and later transported to Missouri. According to the Complaint, she was released on bond, and remains in Missouri. *Id.* at ¶¶ 31-34.

The lengthy Complaint is replete with allegations challenging the legality of the Missouri custody orders and the propriety of the Missouri court's rulings, but those allegations are not directed at Governor Fallin, who obviously had no role in the custody or criminal proceedings. Nevertheless, Plaintiff alleges Governor Fallin violated Plaintiff's constitutional rights by executing the warrant which led to Plaintiff's arrest and extradition. Plaintiff contends that Governor Fallin was obligated to verify the legality of the Missouri custody proceedings before executing the warrant.

Governor Fallin seeks dismissal of the action, arguing this Court lacks subject matter jurisdiction because Plaintiff's claims against her are barred by the doctrine of sovereign immunity. Alternatively, she seeks dismissal pursuant to Fed. R. Civ. P. 12(b)(6), arguing the Complaint fails to state a plausible claim for relief against her.

An assertion of sovereign immunity is properly raised in a motion to dismiss pursuant to Rule 12(b)(1) because the Court lacks subject matter jurisdiction over claims barred by sovereign immunity. *See, e.g., Muscogee (Creek) Nation v. Pruitt*, 669 F. 3d 1159, 1166 (10th Cir. 2012). A state is immune from suit by a private individual, as "'nonconsenting States may not be sued by private individuals in federal court."' *Opala v. Watt*, 454 F.3d 1154, 1157 (10th Cir. 2006) (quoting *Board of Trustees of University of Alabama v. Garrett*, 531 U.S. 356, 363 (1999)). Eleventh Amendment immunity protects a state or an entity which is an "arm of the state," *Steadfast Ins. Co. v. Agricultural Ins. Co.*, 507 F.3d 1250, 1253 (10th Cir. 2007) (citing *Mt. Healthy City School Dist. v. Doyle,* 429 U.S. 274, 280 (1977)), and also bars claims against state officials sued in their official

capacities. *Fed. Maritime Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743, 765 (2002);*Will v. Michigan Department of State Police,* 491 U.S. 58, 71 (1989); *Kentucky v. Graham,* 473 U.S. 159, 165-66 (1985).

The Complaint reflects that Plaintiff's sole claims against Governor Fallin are based on actions taken by the Governor in her official capacity, thus satisfying the initial basis for sovereign immunity. However, Plaintiff contends her claims are not barred because she seeks only injunctive relief against Governor Fallin and, pursuant to *Ex Parte Young*, 209 U.S. 123, 159–60 (1908), injunctive relief is not barred by sovereign immunity.

Contrary to Plaintiff's argument, her Complaint seeks money damages, both compensatory and punitive, against "the Defendants," and she does not exclude Governor Fallin from this requested relief. Complaint, at p. 14. Governor Fallin is immune from liability for compensatory and punitive damages and, to the extent Plaintiff seeks recovery of damages from her, the action is dismissed.

As Plaintiff argues, however, she also seeks injunctive relief against the Governor. Plaintiff asks that the Governor be "temporarily and permanently enjoined from enforcing any and all child custody orders or criminal actions related to child custody orders, from the State of Missouri," except those orders "where it can be demonstrated to the satisfaction of the Governor and Oklahoma courts" that such orders are in conformity with the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), which has been adopted by both Missouri and Oklahoma. Complaint at ¶ 60. Thus, the Court must determine whether Plaintiff's requested injunctive relief qualifies as an exception to sovereign immunity.

An exception to state sovereign immunity exists where a party seeks prospective injunctive

relief against an official. *Young*, 209 U.S. at 159-60; *Chamber of Commerce v. Edmondson*, 594 F.3d 742, 760 (10th Cir. 2010). A claim seeking retrospective relief, however, "does not fall into the *Ex Parte Young* exception to state sovereign immunity." *Buchheit v. Green*, 2012 WL 5909036, at * 1 (10th Cir. Nov. 27, 2012) (unpublished opinion). An injunction seeks retrospective relief where a plaintiff seeks to remedy past injuries. *Id.* Where a plaintiff seeks only "to redress alleged past harms rather than prevent prospective violations of federal law, we can only reasonably categorize such relief as retrospective." *Buchheit*, 2012 WL 5909036, at * 1. Even if a plaintiff characterizes a request for injunctive relief as prospective, the claim is barred if the requested relief is designed to undo a past harm that cannot be remedied by federal court action. *See Opala v. Watt*, 454 F.3d 1154,1160 (10th Cir. 2006). Determining whether a request for injunctive relief is prospective requires a "straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 645 (2002) (quotation omitted).

In this case, it is apparent from the allegations in the Complaint that Governor Fallin's only involvement in any Missouri court proceeding was her approval of a governor's warrant for the arrest and extradition of Plaintiff to Missouri because of the felony charge pending against her in Missouri. Although neither Plaintiff nor the Governor cite the statutory authority for such a warrant, such authority is conferred on the Governor by the Uniform Criminal Extradition Act. Okla. Stat. tit. 22, § 1141.1, *et seq.* The Act provides for the issuance of a Governor's warrant for the arrest of an individual charged with a crime in another state, as "it is the duty of the Governor of this state to have arrested and delivered up to the executive authority of any other state of the United States any person charged in that state with treason, felony, or other crime, who has fled from justice and

is found in this state." Okla. Stat. tit. 22 § 1141.2.

The Court concludes that, based on the express allegations in the Complaint, the Governor's warrant was issued pursuant to the Missouri court's request stemming from the criminal charge rather than from the custody orders. Pursuant to Oklahoma law, the Governor was required to issue the warrant upon a request from the Missouri court. Okla. Stat. tit. 22 § 1141.2. Plaintiff cites no authority that would require the Governor to examine the underlying criminal charge prior to issuing the warrant. The "only prerequisites to extradition from one state to another are that the person sought to be extradited is substantially charged with a crime against the laws of the demanding state, and that he is a fugitive from justice." *Ex parte Langley*, 325 P. 2d 1094, 1101 (Okla. Crim. App. 1958) (citations omitted). To be a "fugitive from justice," a person "need not necessarily have left the state for the purpose of avoiding arrest or prosecution," as "it is enough if, after committing a crime in one jurisdiction, he departs and is later found in another jurisdiction." *McKee v. Page*, 438 P.2d 649 (Okla. Crim. App. 1968); *Ex parte Beam*, 252 P.2d 179, 207 (Okla. Crim. App. 1952).

In this case, Plaintiff does not challenge the validity of the procedures utilized by Missouri state officials in seeking her extradition, nor does she contend that the form or content of the request for a warrant or the warrant issued were defective.[3] While she challenges the Missouri court's authority to issue the *custody* orders, she does not allege that it had no authority to seek a warrant for her arrest on the *criminal* charge. Furthermore, Oklahoma law expressly provides that the Governor may not question the guilt or innocence of the person whose extradition is sought by another state:

The guilt or innocence of the accused as to the crime of which he is charged may not

[3]Although Plaintiff attaches to her Complaint numerous orders issued by the Pulaski County Court, she does not include copies of orders related to the criminal charge.

> be inquired into by the Governor or in any proceedings after the demand for extradition accompanied by a charge of crime in legal form as above provided shall have been presented to the Governor, except as it may be involved in identifying the person held as the person charged with the crime.

Okla. Stat. tit. 22, § 1141.20. Nor may there be "any inquiry into the motives or purposes of the prosecution." *Beam*, 252 P.2d at 207. Plaintiff offers no authority that would permit this Court to issue an injunction that would prohibit Governor Fallin from executing such warrants in the future.[4]

Although she alleges the Governor's warrant was executed as a result of the Missouri criminal charge, Plaintiff nevertheless attempts to characterize Governor Fallin's actions as enforcing the Missouri custody orders, which Plaintiff contends were not lawfully issued. Citing the UCCJEA, she argues Governor Fallin should not have issued the warrant because the Missouri court lacked jurisdiction to issue the custody orders, and she asks this Court to order Governor Fallin to decline to enforce future custody orders from Missouri or other courts unless the Governor first ensures that the orders were properly issued by a court having jurisdiction under the UCCJEA.

Even if Governor Fallin's actions could arguably be construed as enforcing a custody order pursuant to the UCCJEA, Plaintiff offers no authority supporting this Court's power to direct the Governor to challenge the validity of custody orders issued by the court of another state. The UCCJEA requires Oklahoma's state courts to "accord full faith and credit to an order issued by another state." Okla. Stat. tit. 43, § 551-313. Oklahoma courts may not modify a custody order of

---

[4]To the extent Plaintiff seeks this Court's intervention in the Missouri criminal proceeding, "[a] federal court may not intervene in ongoing state criminal proceedings, absent unusual circumstances." *Younger v. Harris*, 401 U.S. 37 (1971). "A federal court must abstain under *Younger* when: '(1) there is an ongoing state criminal, civil, or administrative proceeding, (2) the state court provides an adequate forum to hear the claims raised in the federal complaint, and (3) the state proceedings involve important state interests, matters which traditionally look to state law for their resolution or implicate separately articulated state policies.'" *Strickland v. Wilson,* 399 F. App'x 391, 396 (10th Cir. 2010) (unpublished opinion) (quoting *Amanatullah v. Colorado Bd. of Medical Examiners*, 187 F.3d 1160, 1163 (10th Cir. 1999)). Plaintiff's own allegations reflect that these criteria are satisfied, and *Younger* abstention would apply.

another state having jurisdiction substantially in conformity with the UCCJEA. *Rector v. Kimes*, 60 P.3d 1068, 1070 (Okla. Civ. App. 2002) (citing Okla. Stat. tit. 43, § 551-201 *et seq.*). Although Plaintiff challenges the Pulaski County Circuit Court's exercise of jurisdiction to issue the initial and subsequent custody orders involving the children, she cites no statute or court decision holding that the Governor of Oklahoma is required, or even authorized, to determine the issue of jurisdiction. Instead, determining whether jurisdiction is proper is a matter for the state courts.[5] *See Rector*, 60 P. 3d at 1071.

The Court concludes that Plaintiff's allegations against Governor Fallin do not constitute a cognizable claim for prospective injunctive relief that would satisfy the requirements of *Ex parte Young*. In effect, her claim against Governor Fallin seeks to redress a harm which Plaintiff contends has already occurred, and such claim is barred by sovereign immunity.

Even if Plaintiff's request for an injunction can be construed as seeking prospective injunctive relief, she offers no authority that would permit this Court to direct Governor Fallin to independently verify the validity of another state's custody order. As Governor Fallin argues, Plaintiff's allegations against her are insufficient to state a plausible claim for relief in the form of an injunction, and are thus subject to dismissal pursuant to Fed. R. Civ. P. 12(b)(6). To state a plausible claim for permanent injunctive relief, Plaintiff must allege facts to show: 1) actual success on the merits; 2) irreparable harm unless the injunction is issued; 3) the threatened injury outweighs the harm which the injunction may cause to the opposing party; and 4) the injunction, if issued, will

[5]Courts addressing the question have held that the UCCJEA is "only a state procedural statute," and it "does not confer federal jurisdiction." *Lazaridis v. Wehmer*, 2008 WL 4758551, at *4 (D. Del. Oct. 28, 2008) (unpublished opinion) (citing *Cahill v. Kendall*, 202 F.Supp.2d 1322, 1328 (S.D. Ala. 2002)); *Davis v. Singer*, 2008 WL 2746840, at *2 (E.D. N.C. July 14, 2008) (unpublished opinion) (citing *Smith v. Pines Treatment Center*, 472 F.Supp. 2d 784, 786 (E.D. Va. 2007)).

not adversely affect the public interest. *Fisher v. Oklahoma Health Care Authority*, 335 F.3d 1175, 1180 (10th Cir. 2003). To warrant injunctive relief, "a plaintiff's continued susceptibility to injury must be reasonably certain; a court will not entertain a claim for injunctive relief where the allegations 'take[] [it] into the area of speculation and conjecture.'" *Jordan v. Sosa*, 654 F.3d 1012, 1024 (10th Cir. 2011) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 497(1974)).

To avoid dismissal pursuant to Rule 12(b)(6), a complaint "must contain enough factual allegations 'to state a claim to relief that is plausible on its face.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Robbins v. Oklahoma*, 519 F. 3d 1242, 1247 (10th Cir. 2008). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U. S. at 555. The "mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F. 3d 1174, 1177 (10th Cir. 2007) (emphasis in original).

In this case, the injunctive relief sought by Plaintiff is based on speculation regarding what *might* occur in the future with regard to custody determinations by the Missouri courts. Thus, even if Governor Fallin were not entitled to sovereign immunity, the Complaint fails to state a plausible claim for injunctive relief. Accordingly, for the foregoing reasons, the motion to dismiss the claims against Governor Fallin is GRANTED.

Having granted the motion to dismiss, the Court must determine whether Plaintiff should be allowed to amend her Complaint to cure the deficiencies in her allegations against Governor Fallin. Although leave to amend should be freely granted, it is not mandatory, and may be denied on several grounds, including futility. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Hom v. Squire*, 81 F.3d 969, 973 (10th Cir.1996). A court properly may deny a motion for leave to amend as futile when the

proposed amended complaint would be subject to dismissal for any reason, including that the amendment would not survive a motion for summary judgment. *Bauchman for Bauchman v. West High School*, 132 F.3d 542, 562 (10th Cir. 1997) (citing *AM Int'l, Inc. v. Graphic Management Assocs., Inc.*, 44 F.3d 572, 578 (7th Cir.1995) and *Wilson v. American Trans Air, Inc.*, 874 F.2d 386, 392 (7th Cir.1989)).

In this case, Plaintiff has offered no authority to support a legal basis on which this Court could order injunctive relief against Governor Fallin. Furthermore, the provisions of the Oklahoma statutes governing the issuance of a warrant and those incorporating the UCCJEA reflect that the injunctive relief proposed by Plaintiff is contrary to Oklahoma law.[6] Accordingly, the Court finds that leave to amend the claims against Governor Fallin would be futile, and the Complaint is dismissed with prejudice as to Governor Fallin.

IT IS SO ORDERED this 14th day of January, 2013.

TIMOTHY D. DEGIUSTI
UNITED STATES DISTRICT JUDGE

[6] Additionally, to the extent Plaintiff's requested injunction would require this Court to review the validity of the Missouri custody orders, such action is precluded by the *Rooker-Feldman* doctrine. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462 (1983). The doctrine prohibits a federal court from "considering claims actually decided by a state court, and claims inextricably intertwined with a prior state-court judgment." *Tal v. Hogan*, 453 F.3d 1244, 1256 (10th Cir. 2006). Although Governor Fallin did not seek dismissal on this basis, the Tenth Circuit has held that the *Rooker-Feldman* doctrine bars a plaintiff's attempt to pursue a federal court challenge to a state court's custody decision, even if the plaintiff contends her constitutional rights were violated in connection with that decision *Atkinson-Bird v. State of Utah, Division of Child and Family Services*,92 F. App'x 645, 646 (10th Cir. 2004) (unpublished decision); *Anderson v. State of Colorado*, 793 F.2d 262, 263 (10th Cir. 1986). In such cases, "'it is not necessary that the federal court action formally seek to invalidate the state judgment; it is enough if the federal action would in substance defeat or negate a state judgment, for example, if the federal claim succeeds only to the extent that the state court wrongly decided the issue before it.'" *Atkinson-Bird,* 92 F. App'x at 647 (quoting *Mandel v. Town of Orleans,* 326 F.3d 267, 271 (1st Cir. 2003)).