**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| CASSANDRA RODGERS, individually and as next friend of D.R., J.R., and T.R., minor children, | ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. CIV-12-171-D |
| | ) | |
| MARY FALLIN, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## <u>ORDER</u>

Before the Court is the motion to dismiss [Doc. No. 8] filed jointly by Defendants William Hardwick ("Hardwick"), Kevin Hillman ("Hillman"), and Pulaski County, Missouri ("County"). Hardwick is an Assistant Prosecuting Attorney for Pulaski County, and Hillman is the County Prosecuting Attorney. Also pending before the Court are the motion to dismiss of Defendant Jeremiah W. Nixon, Governor of Missouri ("Governor Nixon") [Doc. No. 11], and the separate joint motion to dismiss [Doc. No. 14] filed by Defendants Gregory Warren and Colin P. Long, who are judges of the Pulaski County Circuit Court. All movants seek dismissal pursuant to Fed. R. Civ. P. 12(b)(1),(2), and (6). Plaintiff has timely responded to each motion, and the respective movants have replied. Because the motions are based on the same legal issues, all are addressed in this Order.[1]

Plaintiff seeks to hold all movants liable to her pursuant to 42 U. S. C. § 1983, alleging they violated her constitutional rights in connection with certain custody proceedings in the Circuit Court of Pulaski County (the "custody orders") and a separate pending Pulaski County criminal action (the

---

[1]A motion to dismiss was also filed by Governor Mary Fallin. That motion was addressed in a separate Order.

"criminal charge").  She further asserts a 42 U. S. C. § 1985 claim, alleging that the movants and

Defendant Nicholas Rodgers ("Rodgers") engaged in a conspiracy to violate her constitutional

rights. In addition, she asserts pendent state law claims for false arrest and imprisonment, malicious

prosecution, and abuse of process. She seeks compensatory and punitive damages from all named

defendants. Complaint at page 14.

Movants are residents of Missouri, and they seek dismissal pursuant to Fed. R. Civ. P.

12(b)(1), arguing they lack the requisite minimum contacts with Oklahoma to permit this Court's

exercise of jurisdiction over them.   In the alternative, Governor Nixon seeks dismissal on grounds

of sovereign immunity, and Judges Warren and Long seek dismissal on judicial immunity grounds.

Hardwick and Hillman assert prosecutorial immunity as an alternative basis for dismissal.   All

movants urge dismissal in the alternative pursuant to Rule 12(b)(6), arguing Plaintiff fails to allege

facts sufficient to state a plausible basis for relief as to any claim asserted.

Background:

Plaintiff alleges that she is a resident of Sequoyah County, Oklahoma.  She and Defendant

Rodgers,  a Missouri resident, are the parents of four children.   According to the Complaint, they

were married in Oklahoma in 2009, and moved to Pulaski County, Missouri shortly thereafter.

Complaint at ¶¶ 17-18.  Approximately one year later, Plaintiff left Rodgers, but continued to reside

in Pulaski County.  In 2010, she moved to Oklahoma.  *Id.* at ¶ 19.  In 2011,  Rodgers filed a Petition

in the Circuit Court of Pulaski County, seeking  an Order of Child Protection as to one of the

children and, as a result, he was awarded custody of one child. The other children, who are triplets,

continued to reside with Plaintiff, who moved to Oklahoma during this time period.   She and Mr.

Rodgers had visitation rights with respect to the children.   Complaint, ¶¶ 20-22. Rodgers later

returned to the Pulaski County court, alleging that Plaintiff physically abused the triplets[2], and he was also granted custody of those children. *Id.* at ¶ 23. Judge Warren issued the custody orders.

According to the Complaint, Plaintiff failed to comply with the order granting Rodgers custody of the triplets, who remained with her in Oklahoma. In October of 2011, she was charged in Pulaski County with the Missouri felony crime of Interference with Custody. Hardwick was the Pulaski County Assistant Prosecuting Attorney who filed the criminal charge, and the matter was assigned to Judge Long, who issued a warrant for Plaintiff's arrest. Complaint, ¶ 29-30. Missouri officials then obtained Governor Nixon's order requesting Governor Fallin's approval of a warrant for Plaintiff's arrest in Oklahoma and her extradition to Missouri. Governor Fallin executed the warrant, and Plaintiff was arrested and later transported to Missouri. According to the Complaint, she was released on bond, and remains in Missouri. *Id.* at ¶¶ 31-34.

Plaintiff seeks actual and punitive damages from all defendants, alleging their conduct in connection with the custody orders and the separate criminal charge violated her constitutional rights. In her responses to the present motions, she argues that she also intended to seek injunctive relief against the defendants, and asks the Court to permit her to amend the Complaint in order to seek such relief.

Application:

Because dismissal for lack of personal jurisdiction is asserted, the Court will first consider that issue because the absence of jurisdiction precludes the need to consider the movants' other bases for dismissal. *Benton v. Cameco Corp.*, 375 F.3d 1070, 1074 n. 1 (10th Cir. 2004).

The Court has discretion to determine whether an evidentiary hearing is required to

---

[2]The Complaint repeatedly alleges that Mr. Rodgers falsely accused Plaintiff, and misrepresented facts to the Pulaski Circuit Court.

3

adjudicate a motion to dismiss for lack of personal jurisdiction.  *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1069 (10th Cir.2008).  In this case, the parties' arguments reflect that there is no need for additional evidence, as Plaintiff concedes the sole basis for jurisdiction is the defendants' respective actions in connection with the Missouri custody orders and the criminal proceeding, as allegedly demonstrated by documents she submits with the Complaint.  Accordingly, the Court finds an evidentiary hearing is not warranted.

To determine if personal jurisdiction exists, the Court must consider whether an applicable statute confers jurisdiction and determine that the exercise of jurisdiction comports with the requirements of due process.  *Peay v. BellSouth Medical Assistance Plan*, 205 F.3d1206, 1209 (10th Cir. 2000).  In this case, Plaintiff cites no statutory authority for nationwide service of process or federal court jurisdiction.  Although she asserts claims based on 42 U. S. C. § 1983, that statute "'does not, by itself, confer nationwide service of process or jurisdiction upon federal district courts to adjudicate claims.'" *Smalls v. Stermer,* 457 F. App'x 715, 717-18 (10th Cir. 2012) (unpublished opinion) (quoting *Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006)).  In the absence of express statutory authority for the exercise of personal jurisdiction, the Court must examine Oklahoma's long-arm statute to determine if the exercise of personal jurisdiction is proper. *Trujillo*, 465 F.3d at 1217.

It is well established that, to be subject to personal jurisdiction,  a nonresident defendant must have sufficient contacts with the forum state to satisfy the requirements of due process. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980);  *Peay*, 205 F.3d at 1209. "To obtain personal jurisdiction over a nonresident defendant . . . a plaintiff must show both that jurisdiction is proper under the laws of the forum state and that the exercise of jurisdiction would not offend due

process." *Intercon, Inc. v. Bell Atlantic Internet Solutions, Inc.*, 205 F.3d 1244, 1247 (10th Cir.2000). In Oklahoma that test becomes a single inquiry because Oklahoma's long-arm statute reaches to the full extent of due process. *Rambo v. American Southern Ins. Co.*, 839 F. 2d 1415, 1416 (10th Cir. 1988).

The minimum contacts required to satisfy due process and confer personal jurisdiction may be established by general or specific jurisdiction. *Benton v. Cameco Corp.*, 375 F.3d 1070, 1075 (10th Cir. 2004). General jurisdiction exists where a plaintiff's cause of action does not arise from or relate to the defendant's activities within the forum state, but the defendant has maintained "continuous and systematic general business contacts in the state." *OMI*, 149 F.3d at 1091. "General jurisdiction requires that a defendant have contacts with the forum 'so continuous and systematic as to render [it] essentially at home in the forum State.'" *Fireman's Fund Ins. Co. v. Thyssen Mining Construction of Canada, Ltd.,* __F.3d __, 2012 WL 6604505, at *3 (10th Cir. Dec. 19, 2012) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown,* __ U.S. __, 131 S.Ct. 2846, 2851 (2011)). Specific jurisdiction exists where a defendant does not have continuous contacts with the forum state, but the plaintiff shows that 1) the defendant has purposefully directed its activities at residents of the forum state; and 2) the plaintiff's alleged injuries "arise out of or relate to" those activities. *Burger King*, 471 U.S. at 473.

Plaintiff does not attempt to argue that this Court may exercise general personal jurisdiction over any of the defendants. Instead, she contends the Court may exercise specific jurisdiction, arguing Defendants purposefully directed their activities at a resident of Oklahoma, and the alleged injuries arise out of or relate to those activities.

"The plaintiff has the burden of establishing jurisdiction when the defendant contests the

court's jurisdictional authority." *Cudd Pressure Control, citing Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir.1995). Where the Court does not hold an evidentiary hearing, the plaintiff must only make a *prima facie* showing of personal jurisdiction by demonstrating, via affidavit or other written materials, facts that, if true, would support jurisdiction over the defendant. *See, e.g., AST Sports Science, Inc. v. CLF Distribution Limited,* 514 F.3d 1054, 1057 (10th Cir. 2008); *Melea, Ltd. v. Jawer SA*, 511 F.3d 1060, 1065 (10th Cir. 2007). In assessing the sufficiency of Plaintiff's showing, the Court must assume the truth of her allegations if they are "plausible, non-conclusory, and non-speculative." *Dudnikov v. Chalk & Vermillion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008). Disputed factual contentions must be resolved in her favor. *Id.*

In this case, Plaintiff does not submit affidavits, but relies on the allegations in the Complaint and the attached copies of pleadings and orders filed in the Pulaski County custody proceedings. She contends these submissions establish that Hillman, Hardwick, Judge Warren, Judge Long, and Governor Nixon have directed activities at the forum state which caused injuries in Oklahoma. Oklahoma.[3]

The attachments to the Complaint consist of orders executed by Judge Warren in the custody proceedings in his official capacity as a judge of the Pulaski County Circuit Court, but do not include orders or filings in connection with the criminal proceeding. Plaintiff alleges, and the defendants do not dispute, that Judge Long issued the arrest warrant resulting from the criminal charge, that Hardwick filed the criminal charge, and that Governor Nixon issued the order which requested Plaintiff's arrest in Oklahoma and her extradition to Missouri.

---

[3]As Hardwick, Hillman, and Pulaski County argue in reply to their joint motion, Plaintiff offers no argument or authority to show that personal jurisdiction may be exercised over Pulaski County. As they also point out, the Complaint contains no factual allegations against Pulaski County. Plaintiff asserts no argument in response to these contentions.

Defendants argue that Plaintiff cannot establish jurisdiction based on the official actions of another state's judges and officials, even though such actions allegedly resulted in harm to Plaintiff in Oklahoma. The Complaint and attached submissions establish that all actions about which Plaintiff complains were taken in the performance of the defendants' official duties in Missouri. Plaintiff does not argue that the movants personally availed themselves of the privilege of conducting activities in Oklahoma on the basis of any actions other than those taken in Missouri in connection with the custody and criminal proceedings pending there.

Plaintiff's contention that such actions are sufficient to establish purposeful availment has been rejected by the Tenth Circuit Court of Appeals and several district courts. In *Trujillo,* a New Mexico prisoner brought a civil rights action in the New Mexico federal court against Virginia officials, arguing they violated his rights by seeking his transfer to Virginia. *Trujillo*, 465 F. 3d at 1219. The Tenth Circuit held that the Virginia officials did not purposefully avail themselves of the right to conduct activities in New Mexico because all relevant conduct by those officials occurred in Virginia and not in New Mexico. Thus, the minimum contacts required to satisfy due process did not exist, and the New Mexico court lacked personal jurisdiction over the Virginia officials. *Id.*

Similarly, personal jurisdiction was found lacking where a plaintiff filed suit in Oklahoma against a Georgia judge, an assistant district attorney and a deputy sheriff, alleging they violated the plaintiff's civil rights by taking action which resulted in his extradition from Georgia to Oklahoma. *Alfred v. Whetsel*, 2008 WL 506335 (W.D. Okla. Feb. 21, 2008) (unpublished opinion). The plaintiff alleged that the Georgia defendants' participation in the extradition proceedings in Georgia was purposefully directed at Oklahoma and caused him injury here. The court rejected that argument, finding the only actions of the Georgia officials occurred in Georgia, and such actions in

connection with their official duties were insufficient to establish "purposeful invocation of the privilege of conducting activities within the State of Oklahoma." *Id.,* at *4.

In *Murray v. Jewell County*, 2011 WL 2601528, at * 1 (D. Colo. June 30, 2011) (unpublished opinion), the District Court of Colorado reached the same conclusion. The plaintiff in that case claimed several Kansas state officers violated his rights by their official actions in seeking his extradition. The court concluded the defendants' actions did not constitute purposeful availment of the right to conduct activities in Colorado, and thus did not permit the Colorado court to exercise jurisdiction over them. *See also Wesley v. Kansas*, 1992 WL 208205 (10th Cir. Aug. 19, 1992) (unpublished opinion) (Colorado federal court lacked  personal jurisdiction over Kansas officials who participated in the plaintiff's extradition from Kansas to Colorado).

In her responses to the respective motions in this case, Plaintiff offers no authority to challenge the application of these decisions in this case. Instead, she argues that personal jurisdiction may be based on the theory that the defendants committed intentional torts which injured her in this state, relying on *Calder v. Jones,* 465 U.S. 783 (1984). Under *Calder,* the purposeful action necessary to establish specific personal jurisdiction may be shown where 1) a "defendant commits 'an intentional action;'" 2) that is "'expressly aimed at the forum state'"; 3) "with 'knowledge that the brunt of the injury would be felt in the forum state.'" *Grynberg v. Ivanhoe Energy, Inc.*, 2012 WL 2855777, at *7 (10th Cir. July 12, 2012) (unpublished opinion) (quoting *Dudnikov*, 514 F.3d at 1072).          Plaintiff alleges that the defendants' actions were intentional, thus satisfying the initial prong of *Calder*. However, the movants argue Plaintiff cannot establish the remaining bases required by *Calder* under the facts alleged.

The Court agrees. Even if the Court accepts as true the allegation that the defendants knew

their respective actions would injure Plaintiff in Oklahoma, the allegations are insufficient to satisfy the Tenth Circuit's application of the requirement that the defendants' actions were expressly aimed at the forum state.  As the movants argue, the Tenth Circuit has narrowly construed this requirement, and holds that a plaintiff seeking to rely on *Calder* must show that the forum state itself was the "focal point" of the alleged tortious conduct.  *See Dudnikov*, 514 F.3d at 1074-75.  *Calder* does not create a "per se rule that an allegation of an intentional tort creates personal jurisdiction." *Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1078 (10th Cir. 1995).

Plaintiff urges this Court to adopt the interpretation of *Calder* described in *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.,* 223 F.3d 1082 (9th Cir. 2000), and hold that personal jurisdiction may be exercised where the non-resident defendant "individually target[s] a known forum resident." *Bancroft,* 223 F.3d at 1087.  However, as Defendants point out, the Tenth Circuit has rejected the *Bancroft* interpretation, and instead requires the "forum state itself must be the focal point of the tort." *Dudnikov,* 514 F.3d at 1075, n. 9; *Far West,* 46 F.3d at 1080.  Thus, contrary to Plaintiff's contention, the fact that Defendants may have known she was residing in Oklahoma at the time the initial custody order was modified and, later, when the criminal charge was filed and her extradition was requested, such knowledge is not enough to establish personal jurisdiction over them. According to the Complaint, the movants' official actions sought the arrest of Plaintiff based on the criminal charge pending in Missouri, and Plaintiff offers no argument that the movants would not have taken such actions if she had resided in a different state.

Plaintiff's allegations, taken as true, reflect that all allegations against Judges Warren and

Long, Governor Nixon, and attorneys Hardwick and Hillman[4] are based on actions taken in Missouri in connection with the exercise of their official duties. The Court finds that Plaintiff has failed to show that any of these defendants' actions could constitute purposeful availment of the benefits of conducting activities in Oklahoma.

Even if the Court determined that the movants purposefully availed themselves of the privilege of conducting activities in Oklahoma, however, it must also determine whether the exercise of jurisdiction over them would "offend traditional notions of fair play and substantial justice." *Clear One Communications v. Bowers*, 643 F.3d 735, 764 (10th Cir. 2011). The movant "'bears the burden of presenting a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Id.* (quoting *Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1161 (10th Cir. 2010) (internal quotation marks and brackets omitted)). "This reasonableness analysis requires the weighing of five factors: (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental social policies." *Clear One*, 643 F.3d at 764 (citations omitted).

As the movants argue in this case, the application of these factors does not warrant this Court's exercise of jurisdiction over them. Litigating these claims in this Court would burden the defendants, who are all judicial officers or executive officials in Missouri. Oklahoma does not have a significant interest in resolving a dispute related only to a Missouri court's decisions regarding

---

[4]As Hillman and Hardwick argue, the Complaint contains no factual allegation that Hillman took any action in connection with the occurrences on which Plaintiff bases her claims. She alleges only that he was the Pulaski County prosecutor at the time of these occurrences, and Hardwick was an assistant prosecutor. Even if she alleged specific conduct by Hillman, however, the Court would lack personal jurisdiction over him.

custody of minor children, especially where the allegations in the Complaint suggest that Plaintiff may seek the review of those decisions by pursuing appellate rights in Missouri. The Court also concludes that adjudication of Plaintiff's claims in this Court would not be the most efficient means of resolving the controversy. Finally, the shared interest of Oklahoma and Missouri in furthering fundamental social policies weighs against this Court's adjudication of claims involving Missouri's child custody proceedings as well as its criminal cases.

For the foregoing reasons, the Court concludes that it may not exercise personal jurisdiction over the movants. Where a court reaches that conclusion, it must dismiss the claims without prejudice or, in the interest of justice, transfer the action to another forum. *Trujillo*, 465 F.3d at 1222-23. (citing 28 U. S. C. § 1406(a). Prior to dismissing the claims, the Court should determine whether a transfer is in the interest of justice. *Id.* Factors warranting transfer in the interest of justice are: 1) a new action would be barred by limitations; 2) the claims asserted are likely to have merit; and 3) the original action was filed in good faith and not filed after the plaintiff knew, or should have known, that she should have filed the action in a different forum. *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1544 (10th Cir. 1996).

In this case, Plaintiff alleges the wrongful acts of the defendants occurred in 2011. Under Missouri law, the statute of limitations for tort claims is five years, and the same limitations period applies to federal civil rights claims. *See Carr v. Aubuchon,* 969 F.2d 714, 716 (8th Cir. 1992); *Cross v. General Motors Corp.*, 778 F. 2d 468 (8th Cir. 1985). Accordingly, a new action filed in Missouri, where personal jurisdiction could be exercised, would not be barred by limitations. Thus, the initial factor does not warrant transfer in lieu of dismissal.

The Court must next determine whether Plaintiff's claims are likely to have merit. As

Defendants point out, all actions against the movants are based on actions taken in their official capacities as judges and prosecutors and, in the case of Governor Nixon, in his official capacity as governor of Missouri.  Each defendant argues that such claims are barred by immunity.

Judges Warren and Long[5] each argue that, even if the Court could exercise jurisdiction over them, Plaintiff's claims are barred by the doctrine of judicial immunity.  "Judges have absolute immunity from suits for monetary damages for their judicial acts, including sentencing." *Calvert v. Safranek*, 209 F. App'x 816, 820 (10th Cir. 2006) (unpublished opinion) (citing *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978)); *see also Mireles v. Waco*, 502 U.S. 9, 11-12 (1991). Although Plaintiff contends the doctrine does not apply to injunctive relief, Defendants correctly note in reply that the authority on which Plaintiff relies, *Pulliam v. Allen,* 466 U.S. 522 (1984), has been superseded by statute in § 1983 actions following enactment of the Federal Courts Improvement Act of 1996, Pub.L. No. 104-317 (1996), which amended § 1983 to add that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 42 U. S. C. § 1983.   Judges Warren and Long are thus entitled to immunity on Plaintiff's § 1983 claims against them, as well as any claims for money damages.

Hardwick and Hillman assert that they are entitled to prosecutorial immunity.  "A criminal prosecutor enjoys absolute immunity from damages under section 1983 when he 'initiates a prosecution' and 'present[s] the State's case.'" *Calvert v. Safranek*, 209 F. App'x 816, 819 (10th Cir. 2006) (unpublished opinion) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976) and citing *Scott v. Hern*, 216 F.3d 897, 908-09 (10th Cir. 2000)).  Prosecutorial immunity extends to prosecutorial

---

[5]Defendants also note in reply that Judge Long has recused from the criminal proceeding.  Accordingly, any claim for prospective relief against him is moot.

12

conduct occurring before trial.  *Burns v. Reed,* 500 U.S. 478, 490 (1991).  In this case, Plaintiff's

only allegations against Hardwick[6] are that he presented information to the Circuit Court of Pulaski

County which led to the felony charge against Plaintiff and to the issuance of a warrant for her

arrest.  These actions constitute conduct only in connection with official duties, and are associated

with the judicial phase of the criminal process, as required for prosecutorial immunity.  *Imbler*, 424

U.S. at 479.

The Court thus concludes that Plaintiff is unlikely to succeed on the merits of her claims

against Defendants Hardwick and Hillman because such claims would be barred by prosecutorial

immunity.

Similarly, Plaintiff is unlikely to succeed on the merits of her claims against Governor Nixon

because such claim would be barred by sovereign immunity.  An assertion of sovereign immunity

is properly raised in a motion to dismiss pursuant to Rule 12(b)(1) because the Court lacks subject

matter jurisdiction over claims barred by sovereign immunity.  *See, e.g., Muscogee (Creek) Nation*

*v. Pruitt*, 669 F. 3d 1159, 1166 (10th Cir. 2012).  A state is immune from suit by a private individual,

as "'nonconsenting States may not be sued by private individuals in federal court.'"  *Opala v. Watt*,

454 F.3d 1154, 1157 (10th Cir. 2006) (quoting *Board of Trustees of University of Alabama v.*

*Garrett*, 531 U.S. 356, 363 (1999)).  Eleventh Amendment immunity protects a state or an entity

which is an "arm of the state,"  *Steadfast Ins. Co. v. Agricultural Ins. Co.,* 507 F.3d 1250, 1253 (10th

Cir. 2007) (citing *Mt. Healthy City School Dist. v. Doyle,* 429 U.S. 274, 280 (1977)), and also bars

---

[6]As the movants argue, Plaintiff does not allege any facts to show that Hillman personally participated in these actions.  In her response, Plaintiff concedes that he did not directly participate in filing the criminal charges, but she argues he should be liable because he supervised Hardwick.  As a general rule, however, §1983 liability requires allegations of personal participation, and Plaintiff must allege facts to show such participation.  *See, e.g., Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996).

claims against state officials sued in their official capacities.  *Fed. Maritime Comm'n v. S.C. State Ports Auth*., 535 U.S. 743, 765 (2002); *Will v. Michigan Department of State Police,* 491 U.S. 58, 71 (1989); *Kentucky v. Graham,* 473 U.S. 159, 165-66 (1985).

The Complaint reflects that Plaintiff's sole claims against Governor Nixon are based on actions taken by the Governor in his official capacity.  However, Plaintiff contends she also seeks injunctive relief against Governor Nixon and, pursuant to *Ex Parte Young*, 209 U.S. 123, 159–60 (1908),  injunctive relief is not barred by sovereign immunity.

Contrary to Plaintiff's argument, her Complaint seeks money damages, both compensatory and punitive, against "the Defendants," and she does not exclude Governor Nixon from this requested relief.  Complaint, at p. 14.  Governor Nixon is immune from liability for compensatory and punitive damages.

An exception to state sovereign immunity exists where a party seeks prospective injunctive relief against an official. *Young,* 209 U.S. at 159-60; *Chamber of Commerce v. Edmondson*, 594 F.3d 742, 760 (10th Cir. 2010).  A claim seeking retrospective relief, however,  "does not fall into the *Ex Parte Young* exception to state sovereign immunity."  *Buchheit v. Green*, 2012 WL 5909036, at * 1 (10th Cir. Nov. 27, 2012) (unpublished opinion).  An injunction seeks retrospective relief where a plaintiff seeks to remedy past injuries.  *Id.*  Where a plaintiff seeks only "to redress alleged past harms rather than prevent prospective violations of federal law, we can only reasonably categorize such relief as retrospective." *Buchheit,* 2012 WL 5909036, at * 1.  Even if a plaintiff characterizes a request for injunctive relief as prospective, the claim is barred if the requested relief is designed to undo a past harm that cannot be remedied by federal court action.  *See Opala*, 454 F.3d at 1160. Determining whether a request for injunctive relief is prospective requires a "straightforward inquiry

into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 645 (2002) (quotation omitted).

In this case, to the extent Plaintiff seeks monetary damages against Governor Nixon, her claims are barred by sovereign immunity.  Although she purports to seek prospective injunctive relief against him, the only relief she seeks is the redress of past harms allegedly resulting from his conduct in requesting Plaintiff's arrest and extradition to Missouri.  The Court concludes that her claims against Governor Nixon lack merit; she alleges no facts which could warrant prospective injunctive relief.

Finally, the movants argue that, even if personal jurisdiction could be exercised by this Court,

the relief sought by Plaintiff with regard to the ongoing Missouri custody and criminal proceedings is barred by the *Rooker-Feldman* doctrine, which prohibits a federal court from relitigating and reviewing a state court's decision.  *See D.C. Court of Appeals v. Feldman,* 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923).   Defendants note that the Complaint expressly asks the Court to review the  Pulaski Circuit Court custody proceedings and declare the orders null and void, and it further asks this Court to conclude the criminal proceeding should be dismissed. Complaint at ¶¶ 51, 53.

The *Rooker–Feldman* doctrine generally denies federal courts jurisdiction to adjudicate claims seeking the review of state court judgments. *Erlandson v. Northglenn Mun. Court*, 528 F.3d 785, 789 (10th Cir.2008). Although the doctrine has been modified, it applies, however, to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered

before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Segler v. Ross Management Group, Inc.*, 2012 WL 5259277, at *1 (10th Cir. Oct. 25, 2012) (unpublished opinion). (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)). The only federal court with jurisdiction to review the final judgments of state courts is the United States Supreme Court. *Erlandson*, 528 F.3d at 789 n. 4.

The Tenth Circuit has expressly applied the *Rooker-Feldman* doctrine to a federal civil rights action in which a parent challenged a state court child custody decision. *Atkinson-Bird v. State of Utah,* 2004 WL 267754, at *1 (10th Cir. Feb. 13, 2004) (unpublished opinion). In *Atkinson-Bird,* the Circuit held that federal court adjudication of the claims would, of necessity, require the federal court to relitigate and review the validity of the state court decisions, a result prohibited by *Rooker-Feldman. Id.*

As Defendants further argue, this Court is also precluded from  intervening in the Missouri criminal proceeding.  "A federal court may not intervene in ongoing state criminal proceedings, absent unusual circumstances."  *Younger v. Harris*, 401 U.S. 37 (1971). "A federal court must abstain under *Younger* when: '(1) there is an ongoing state criminal, civil, or administrative proceeding, (2) the state court provides an adequate forum to hear the claims raised in the federal complaint, and (3) the state proceedings involve important state interests, matters which traditionally look to state law for their resolution or implicate separately articulated state policies.'" *Strickland v. Wilson,* 399 F. App'x 391, 396 (10th Cir. 2010) (unpublished opinion) (quoting *Amanatullah v. Colorado Bd. of Medical Examiners,* 187 F.3d 1160, 1163 (10th Cir. 1999)).  Plaintiff's own allegations reflect that there is an ongoing Missouri criminal proceeding, and she fails to argue that there is no Missouri forum which could review the claims she asserts in this case.  Furthermore,

Missouri clearly has an interest in interpreting its own criminal statutes, and Plaintiff offers no contention that she has no opportunity to pursue an appeal of the Missouri court's decisions through that state's appellate procedures. Plaintiff's own allegations in this case reflect that *Younger* abstention must apply to the extent she seeks this Court's intervention in the Missouri criminal proceeding.

Having examined Defendants' arguments in light of the allegations in the Complaint, the Court concludes that the factors warranting transfer of this action in lieu of dismissal are not present, particularly in light of the highly questionable prospect that she could succeed on the merits of her claims against these defendants. Consequently, the Court concludes that dismissal of these claims for lack of personal jurisdiction is warranted. Dismissal would also be warranted on the bases of judicial, prosecutorial, and sovereign immunity as well as the *Rooker-Feldman* doctrine. Finally, to the extent Plaintiff seeks the Court's intervention in the ongoing Missouri criminal proceeding, the Court would abstain, pursuant to *Younger,* even if personal jurisdiction could be exercised over these defendants.

Accordingly, the motions [Doc. Nos. 8, 11, and 14] to dismiss are GRANTED for the reasons set forth herein. Because the Court has concluded that it lacks personal jurisdiction over the movants, however, the dismissal must be without prejudice to the filing of an action in a proper forum where personal jurisdiction could be exercised. *Andrews v. Geithner*, 2012 WL 6634622, at *2 (10th Cir. Dec. 21, 2012) (unpublished opinion); *Hollander v. Sandoz Pharm. Corp.*, 289 F.3d 1193, 1216 (10th Cir. 2002). A Court's dispositional choices upon finding lack of personal jurisdiction are transfer or dismissal without prejudice. *Arocho v. Lappin*, 461 F. App'x 714, 719 (10th Cir. 2012) (unpublished opinion) (citing *Trujillo,* 465 F.3d at 1222-23). Thus, a conclusion

that transfer is improper in part because the claims appear to lack merit does not warrant dismissal with prejudice.  *See, e.g., Good v. Fuji Fire & Marine Ins. Co., Ltd.*, 271 F. App'x 756, 760 (10th Cir. 2008) (unpublished opinion).   Accordingly, the claims are dismissed without prejudice.

Conclusion:

The motions to dismiss for lack of personal jurisdiction [Doc. Nos. 8, 11, and 14] are GRANTED.  The action is dismissed as to the movants, Judge Gregory Warren, Judge Colin P. long, Governor Jeremiah W. Nixon, Pulaski County, William Hardwick, and Kevin Hillman without prejudice.

IT IS SO ORDERED this 14th day of January, 2013.

TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE